## NORTH AMERICAN LIFE INS. CO. OF CHICAGO v. FULTON et ux.
### No. 3012.

Court of Civil Appeals of Texas. El Paso.
June 28, 1934.

N. B. Birge and Hamp P. Abney, both of Sherman, for plaintiff in error.

Webb & Webb, of Sherman (G. P. Webb, of Sherman, of counsel), for defendants in error.

WALTHALL, Justice.

We will designate the parties respectively as plaintiff and defendant, as in the trial court.

Plaintiff, North American Life Insurance Company of Chicago, held a promissory note for the principal sum of $3,000 executed by Pickens Bowen, and also held a mortgage on certain lands in the state of Oklahoma, given to secure the payment of said note. The note and mortgage were executed on January 16, 1920, the note made payable to the order of Gum Brothers Company, a corporation, on the 1st day of January, 1927. The note is made to bear interest. Defendant Robert S. Fulton bought the land from Pickens Bowen. The note and the mortgage were duly transferred by Gum Bros. Company to plaintiff.

Plaintiff claims, and made it the basis of its suit, that on December 13, 1926, defendant Robert S. Fulton and wife, Pearl D. Fulton, in consideration of the extension of the time of payment of the Pickens Bowen note to the 1st day of January, 1932, executed and delivered to plaintiff an instrument in writing with the mutual agreements and covenants therein expressed and by which defendant assumed and promised to pay the Bowen note. The note not having been paid, the mortgage lien on the said land was foreclosed, the land sold in the state of Oklahoma without personal service on defendant Fulton. A credit of $1,634.65 as the net proceeds from the sale of said land under foreclosure was admitted, leaving a balance due on the note of $2,355.35, for which plaintiff sues and asks judgment.

Under their plea of coverture Mrs. Pearl D. Fulton was dropped as a party to the suit.

Defendant Robert S. Fulton answered by general demurrer and a number of special exceptions and other matters not passed upon by the trial court.

Defendant further answered by general denial, and under oath specially denied that he assumed or promised to pay the $3,000 note pleaded by plaintiff, that he did not sign any such assumption, nor did any one sign for him such assumption with his knowledge or consent.

Defendant further answered that, by reason of the facts stated, the land sold for an inadequate price, and further: "That the instrument herein sued on (the extension agreement) contained material alterations as set out above, and hence vitiates the said instrument."

Defendant admits that he purchased said land subject to said indebtedness, and specially denies that he assumed any personal liability for said indebtedness; that he executed the extension loan agreement, but same did not contain the words indicated in his answer; that, if said words quoted appeared on any instrument purporting to have his signature, same were placed there after said instrument had been signed and without his knowledge or consent, and are an alteration.

The court overruled plaintiff's motion for an instructed verdict in its favor and submitted the case to the jury on special issues. On special issues submitted, the jury found:

That the term "and is liable for the debts secured thereby" as set out in the extension agreement introduced in evidence, was erased from said extension agreement at the time same was signed by Robert S. Fulton and wife, Pearl D. Fulton; that the term "as shown below," as set out now in said extension agreement, was not written in said extension agreement at the time it was signed by said Robert S. Fulton and Pearl D. Fulton; that the term "are by him assumed and adopted and shall be by him fully performed" was struck from said instrument at the time it was signed by the Fultons; that the said instrument at the time it was signed by the Fultons did not have the following words written in with a typewriter in the lower left-hand corner of said instrument as follows: "Parties of the second part (the Fultons) agree to pay the said principal notes as follows:

$ 100.00 on January 1, 1928;
$ 100.00 on January 1, 1929;
$ 100.00 on January 1, 1930;
$ 100.00 on January 1, 1931;
$2,500.00 on January 1, 1932."

The jury found that the reasonable cash market value per acre of the land in question (140 acres) on the 11th day of May, 1931, was $40.

On motion of defendant, the court entered judgment that plaintiff take nothing by his suit.

Plaintiff duly prosecutes this appeal.

### Opinion.

Plaintiff submits that defendants' pleading and proof tended to show and the jury's finding shows only that the alterations of the extension agreement occurred after it was signed by defendant and not after its execution or delivery; that, the delivery of the instrument being a part of its execution, an alteration of the instrument is not shown where the record shows only an alteration after signing.

An examination of the entire record discloses that the terms referred to in the findings of the jury were written in the extension agreement instrument and a pencil or pen line run through them before defendant Fulton signed the instrument. There is no expression in the pleading or evidence or in the findings of the jury, tending to indicate, include, or embrace the condition of the instrument at any time other than when defendant signed it. In other words, no reference is anywhere made to the condition of the instrument as to said terms at any time other than when defendant Fulton signed it; the condition of the instrument as to said terms is not mentioned when it was executed or delivered.

The change in the instrument by removing therefrom the lines drawn through the terms intended by Fulton to be excluded, as indicated in the jury's findings, without his consent, and making the instrument to read with the terms therein as parts of the instrument, is a material change in the instrument because such change varies the legal effect or operation of the instrument.

In Texas Jurisprudence, vol. 2, p. 698, it is said: "While there are authorities which state that a material alteration of an instrument, if made by one of the parties thereto 'before' delivery, vitiates the instrument or renders it non-enforceable, the general rule is that an interlineation, erasure or other material alteration in a written contract cannot affect its validity unless the alteration was made 'after' execution and delivery, and this rule prevails in Texas"—and refers to Matson v. Jarvis, 63 Tex. Civ. App. 376, 133 S. W. 941. A writ of error was refused.

It was held in Behrens v. Kirkgard (Tex. Civ. App.) 143 S. W. 698, that changes made before final execution of an instrument

are usually held to be a part of the agreement of the parties, but such does not apply where it is shown, as here, that the changes were made without the knowledge or consent of the one signing the instrument. Tex. Juris. vol. 2, p. 698, and referring to Nelson v. Downtain, 265 S. W. 135 (Commission of Appeals).

■ We think the evidence is sufficient to justify the submission of the issues to the jury and to sustain the findings made as to alterations in the extension agreement. The record does not show misconduct of the jury.

Finding no reversible error, the case is affirmed.